UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

MORGAN HOWARTH

    Plaintiff,

vs.

THE DREAM TEAM (GREEN HILLS), LLC, THE DREAM TEAM (MURFREESBORO), LLC, and THE DREAM TEAM (FRANKLIN), LLC

    Defendants

CIVIL ACTION # 4:25-CV-23
McDonough/Dnmitr

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Morgan Howarth, by and through his undersigned attorneys, respectfully alleges as follows for its complaint against Defendants.

## PARTIES

1. Plaintiff Morgan Howarth ("Plaintiff" or "Howarth") is an individual residing in Gainesville, Virginia.

2. Defendant The Dream Team (Murfreesboro), LLC d/b/a Southern Middle Realty ("Defendant" or "Southern Middle") is a Tennessee limited liability company with a home office at 707 Kings Lane, Tullahoma, Tennessee 37388. According to records maintained by the Tennessee Secretary of State, Southern Middle may be served through its registered agent, Lisa K. Wright, at 9175 Carothers Parkway, Suite 110, Franklin, Tennessee 37067.

3. Defendant The Dream Team (Green Hills), LLC d/b/a Keller Williams Realty Nashville Music City ("Defendant" or "KW Nashville") is a Tennessee limited liability company with its principal place of business at 4101 Charlotte Avenue, Suite D160, Nashville, Tennessee

37209. According to records maintained by the Tennessee Secretary of State, KW Nashville may be served through its registered agent, Grover Collins, at 4101 Charlotte Avenue, Suite F186, Nashville, Tennessee 37209.

4. Defendant The Dream Team (Franklin), LLC d/b/a Keller Williams Realty Franklin (previously d/b/a Keller Williams Realty Nashville Franklin) ("Defendant" or "KW Franklin") is a Tennessee limited liability company with its principal place of business at 9175 Carothers Pkwy., Ste. 110, Franklin, Tennessee 37067. According to records maintained by the Tennessee Secretary of State, KW Franklin may be served through its registered agent, Grover Collins, 4101 Charlotte Ave., Suite F186, Nashville, Tennessee 37209.

## NATURE OF THE CLAIMS

5. This is an action for copyright infringement and violations of the Digital Millennium Copyright Act ("DMCA") arising in connection with the unauthorized commercial exploitation of one of Plaintiff's architectural photographs on the social media pages of Defendants' real estate agents.

## JURISDICTION AND VENUE

6. This action arises under 17 U.S.C. §§ 101 *et seq.* (the U.S. Copyright Act). The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question) and § 1338(a) (copyrights).

7. This Court has personal jurisdiction over the Defendants because they are Tennessee limited liability companies conducting business in the state. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because all Defendants reside in Tennessee and at least one—Defendant Southern Middle—maintains its home office in Tullahoma, Tennessee. Venue is

also proper under § 1391(b)(2) and § 1400(a) because a substantial part of the infringing acts occurred in this District.

## CONDITIONS PRECEDENT

8. All conditions precedent have been performed or have occurred.

## BACKGROUND FACTS

9. Morgan Howarth is an accomplished architectural photographer based in Virginia. Howarth utilizes a painstaking process which combines multiple exposures to create a rich, distinctive result and is highly sought after for his work. Mr. Howarth's expansive client base includes CBS, Timex, Sears, Cole Haan, Home & Design Magazine, Hilton Worldwide, Modern Luxury Magazine, and Marriott International.

10. Defendants KW Nashville and Southern Middle Realty are real estate brokerages based in Tennessee that supervise and exercise control over hundreds of sales agents, including those whose conduct gives rise to the claims in this action.

11. Howarth is the sole author and creator of the photo at issue in this action (the "Photo"), depicting an attractive fireplace sitting area at a residential property. A copy of the Photo is set forth below:



12. The Photo was timely registered with the U.S. Copyright Office, which issued registration number VA 2-229-899, effective December 18, 2020. ("**Exhibit 1**").

13. Several of Defendants' real estate agents prominently featured the Photo on their respective social media pages without any authorization or license to do so. Examples of these social media posts are reflected below.







14.  The Photo was originally published with credits identifying Howarth as the author and copyright owner. As utilized by the Defendants and their agents, the Photo bore no credits, which appear to have been intentionally omitted—in an attempt to induce, enable, facilitate and/or conceal the infringement of Plaintiff's copyrights.

15.  On January 31, 2025, Howarth placed Defendants on notice of their unauthorized use of the Photo. Although the Photo was eventually removed from at least some of Defendants'

real estate agents' social media pages, Defendants otherwise rejected Plaintiff's efforts to settle his claims and eventually stopped communicating altogether, leaving Howarth with no alternative but to proceed with this lawsuit.

## COUNT 1: COPYRIGHT INFRINGEMENT

16. Plaintiff realleges and incorporates herein the foregoing paragraphs.

17. By their actions alleged above, Defendants—by and through their real estate agents—have infringed Howarth's copyrights in the Photo. Specifically, by copying, displaying, distributing, and otherwise exploiting the Photo on their Facebook pages, Defendants' real estate agents have infringed Howarth's exclusive rights set forth in 17 U.S.C. § 106.

18. In addition, and/or in the alternative, upon information and belief, Defendants are jointly and severally liable for any direct copyright infringement committed by their real estate agents, because they participated in the acts of infringement and/or because they determined the policies that resulted in the infringement. *See, e.g., Word Music, Ltd. Liab. Co. v. Lynns Corp. of Am.*, No. 3:09-0411, 2010 U.S. Dist. LEXIS 9559 , *23 (M.D. Tenn. 2010)

19. Upon information and belief, Defendants' actions constituted willful infringement of Howarth's copyrights inasmuch as they knew, or had reason to know, that their use of Plaintiff's Work was unauthorized; and/or because they acted with reckless disregard of Plaintiff's copyrights. For example, Defendants' reckless failure to ensure that their real estate agents' use of the Photo was authorized supports a finding of willful infringement. *See, e.g., Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 992 (9th Cir. 2017) (infringer's failure to conduct any inquiry into ownership supported a finding of willfulness); *Hamil America, Inc. v. GFI*, 193 F.3d 92, 97 (2d Cir. 1999) ("The standard is simply whether the defendant … recklessly disregarded the possibility" of infringement).

20. As a result of the foregoing, Howarth is entitled to actual damages, plus Defendants' profits; and/or statutory damages of up to $150,000 per work infringed by Defendants, plus attorney's fees and costs of court. 17 U.S.C. §§ 504, 505.

## COUNT 2: VICARIOUS INFRINGEMENT

21. Plaintiff realleges and incorporates herein the foregoing paragraphs.

22. In addition to, and/or in the alternative to direct infringement, Defendants are jointly and severally liable for vicarious infringement because they had the right and ability to supervise the infringing activities of their real estate agents, contractors, and representatives (including the person or persons who placed the Photo on the agents' social media), and the practical ability to stop the infringement (by prohibiting the use of the Photo and/or causing the removal of the Photo from the agents' social media), and because they had a direct financial interest in the infringing activities of their agents, contractors, and representatives by virtue of the business generated through the unlicensed use of the Photo (which the agents used to draw potential customers to their social media, keep them engaged, and induce them to utilize realtor services) and the saved costs of properly licensing the work. *See Broad. Music, Inc. v. Meadowlake, Ltd.*, 754 F.3d 353, 354 (6th Cir. 2014).

23. In connection with the foregoing, it is important to note that KW Nashville and Southern Middle Realty not only had the right and ability to supervise the infringing activities at issue, they had a *legal obligation* to do so. Under Tennessee law, a principal broker is required to exercise adequate supervision over all affiliate brokers and licensees operating under their supervision, including in connection with advertising activities. *See* Tenn. Code Ann. § 62-13-312(b)(15). The Tennessee Real Estate Commission also mandates that all advertising—including on social media—must confirm to its rules and remain under the supervision of the principal

broker. *See* Tenn. Comp. R. & Regs. 1260-02-. 12(1), 3(b). Inasmuch as real estate agents utilize their social media accounts to advertise their services as realtors, KW Nashville and Southern Middle Realty were responsible for supervising their activities on those platforms. *Id.*[1]

24. Upon information and belief, Defendants' actions constituted willful infringement of Howarth's copyrights inasmuch as they knew, or had reason to know, that their use and display of the Photos required prior authorization and/or because they acted with reckless disregard of Plaintiff's copyrights; and/or because they exhibited willful blindness to the possibility that they were infringing Plaintiff's copyrights.

25. As a result of the foregoing, Plaintiff is entitled to actual damages, and any additional profits of Defendants; or statutory damages of up to $150,000 per work infringed, plus attorney's fees and costs of court. 17 U.S.C. §§ 504, 505.

### COUNT 3: DMCA VIOLATION

26. Plaintiff realleges and incorporates herein the foregoing paragraphs.

27. Upon information and belief, Defendants have violated Section 1202 of the Digital Millennium Copyright Act by omitting Howarth's so-called copyright management information ("CMI"), consisting of his name as author of the Photo and other identifying information about the Photo. Courts recognize that the removal of CMI is a serious violation of copyright because it deprives the copyright owner of professional recognition and makes it easier for other potential infringers to compound that injury. *See Reilly v. Plot Commerce*, No. 15-CV-05118 (PAE)(BCM), 2016 U.S. Dist. LEXIS 152 154, at *21-22 (S.D.N.Y. Oct. 31, 2016), quoting Russell W. Jacobs,

---

[1] *See* https://www.nar.realtor/social-media (discussing the importance of social media in generating real estate leads); Sanette Tanaka, *20 Seconds for Love at First Sight*, Wall Street Journal, March 21, 2013, https://www.wsj.com/articles/SB10001424127887324077704578360750949646798 (noting that homebuyers spend 60% of their time reviewing photographs). *See, also Playboy Enters., Inc. v. Webbworld, Inc.*, 968 F. Supp. 1171, 1177 (N.D. Tex. 1997) (where the court found that the plaintiff's photographs acted as a draw for customers by enhancing "the attractiveness of [defendant's] website to potential customers.").

*Copyright Fraud in the Internet Age*, 13 Colum. Sci. & Tech. L. Rev. 97, 147 (Feb. 15, 2012) (section 1202 of the DMCA protects a copyright owner's "rights of integrity and attribution," which in turn protect against "the widespread dispersion of inauthentic copies"). Upon information and belief, Defendants' actions were committed knowingly, and with the intent to induce, enable, facilitate, and/or conceal infringement.

28. In addition, and/or in the alternative, upon information and belief, Defendants are vicariously liable for the above-described violations of the DMCA because they had the right and ability to supervise the infringing activities of their agents, contractors, and representatives, including the person or persons who removed and/or omitted Plaintiff's CMI, and the practical ability to stop the violation (by prohibiting the unattributed use of the Photo and/or removing the Photo from the social media pages in question), and because they had a direct financial interest in the infringing activities of their agents, contractors, and representatives by virtue of the business generated through the unlicensed use of the Photo (which Defendants used to market their services and induce visitors retain them as their realtors) and the saved costs of properly licensing the Photo.

29. As a result of the foregoing, Howarth is entitled to actual damages plus Defendants' profits; or in the alternative, statutory damages for each violation in an amount no less than $2,500 and no more than $25,000, plus costs and attorney's fees. 17 U.S.C. § 1203(b)(4-5) & (c).

## PRAYER

Plaintiff Howarth prays for:

A. An order that Defendants and all persons under their direction, control, permission or authority be enjoined and permanently restrained from exploiting the photograph at issue;

B. For each work infringed by Defendants, an award of actual damages and/or statutory damages under 17 U.S.C. § 504(c);

MORGA HOWARTH .VTH EDREA MTE A M(GREE NHILLS), LLC ET AL
PLAINTIFF'S ORIGINAL COMPLAINT
9 OF 10
Case 4:25-cv-00023-TRM-MJD   Document 1   Filed 05/01/25   Page 9 of 10   PageID #: 9

C. For each violation of the Digital Millennium Copyright Act, an award of statutory damages under 17 U.S.C. § 1203(c);

D. An award to Plaintiff of its reasonable costs and attorney's fees under 17 U.S.C. §§ 505 and 1203(b)(4) & (5)

E. Prejudgment and post-judgment interest on any damage award as permitted by law; and

F. Such other and further relief as the Court may deem just, proper and/or necessary under the circumstances.

Respectfully submitted,

**AMINI & CONANT, LLP**

By: /s/ R. Buck McKinney
R. Buck McKinney (*to be admitted pro hac vice*)
Texas Bar No. 0078452
1204 San Antonio Street, Second Floor
Austin, Texas 78701
t: (512) 222-6883
f: (512) 900-7967
service@aminiconant.com
buck@aminiconant.com

*Counsel for Plaintiff*